Hanzhang Xu (SBN: 312813)
Ke Ye (SBN: 338149)
Mino Law Group, A Professional Corporation
16520 Bake Parkway, Suite 105
Irvine, CA 92618
hxu@minolawgroup.com
Tel: 949-771-2680

Counsel for Plaintiffs,
Zhelin Zhao & Yingchen Sun

### UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHELIN ZHAO & YINGCHEN SUN, | **Case No.: 5:22-cv-01401** |
| Plaintiffs, | **Agency No.: A 208 467 163** |
| | **A 208 467 164** |
| vs. | |
| Dir LA Asylum Ofc; Dir LA Dist; USCIS; Dir USCIS; Sec DHS; US AG, | COMPLAINT FOR DECLARTORY AND INJUNCTIVE RELIEF, AND FOR A WRIT IN THE NATURE OF MANDAMUS TO COMPEL DEFENDANTS' DETERMINATION OF PLAINTIFFS' APPLICATION FOR ASYLUM |
| Defendants. | |

JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 USC §1331, this action being one that arises under the Constitution and laws of the United States (specifically the Fifth Amendment, the Immigration and Nationality Act ("INA"), 8 USC §§1101 et seq., as amended, in particular 8 USC §1158(d)(5)(A)(1)(ii), [§1158(d)(7) notwithstanding], and the Administrative Procedures Act ("APA"), 5 USC §§551 et seq., as amended, in particular 5 USC §§555 and 701-706); pursuant to 28 USC §1361, this action being in the nature of mandamus to compel officers and employees of the United States to perform duties owed to Plaintiffs, and pursuant to 5 USC §706, this action being one invoking the Court's jurisdiction to compel agency action unlawfully withheld and unreasonably delayed.

2. Defendants, did not properly exercise their authority under the APA, violating their duty under that statute. In addition, Defendants did not inform Plaintiffs that although they filed their application as a time when FIFO (First-in, First-out) processing was in effect, the new LIFO (Last-in, First-out) would be applied to them, thereby violating Plaintiffs' due process rights under the 5th amendment to the U.S. Constitution.

3. Declaratory judgment is sought pursuant to 28 USC §§2201-2202.

4. Plaintiffs allege eligibility for attorney's fees, related expenses and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 USC §2412.

5. Venue is proper in this Court, pursuant to 28 USC §1391(e), in that this is an action against officers and agents/employees of the United States in their official

capacities, brought in the District where a Defendant resides and where a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred. More specifically, Plaintiffs' form I-589 application for asylum was properly filed and remains pending with the USCIS Los Angeles Asylum Director.

PARTIES

A.   Plaintiffs

6.   Plaintiffs Zhelin Zhao & Yingchen Sun, husband and wife, are citizens of the People's Republic of China, are residents of Los Angeles County, California; and applicants for asylum [form I-589] 8 U.S.C. §1158 et seq., INA §208 et seq.

B.   Defendants

7.   Defendant Director of the Los Angeles Asylum Office for the U.S. Citizenship & Immigration Services ("USCIS") of the Los Angeles District, is charged under law to implement and enforce the Immigration & Nationality Act ("INA") and related regulations as they relate to asylum.

8.   Defendant District Director of the Los Angeles District of the USCIS is charged under the law to implement and enforce the Immigration and Nationality Act ("INA"). The USCIS is a federal agency within the United States Department of Homeland Security ("DHS") which is charged under the law to implement and enforce the INA and related regulations.

9.   Defendant U.S. Citizenship & Immigration Services ("USCIS") is a federal agency within the United States Department of Homeland Security and is charged under the law to implement and enforce the INA and related regulations.

10.   Defendant Director of the USCIS is charged under the law to supervise the USCIS and to implement and enforce the INA and related regulations.

11.   Defendant Secretary of Homeland Security of the United States a department which is charged with the administration and enforcement of the immigration and nationality laws of the United States and to prescribe regulations pursuant to the Administrative Procedures Act ("APA").

12.   Defendant U.S. Attorney General also charged with the administration and enforcement of the immigration and nationality laws of the United States and to prescribe regulations pursuant to the APA.

<u>FACTS</u>

13.   On or about September 17, 2015, Plaintiffs' I-589 Application for Asylum was received by Defendant USCIS. Defendant issued receipt number(s): <u>ZLA1500152530 & ZLA1500152540</u> respectively. See I-589 Biometrics Notices listing receipt date and receipt numbers attached hereto as collective Exhibit A.

14.   On or about September 19, 2015, Defendant USCIS issued notices to Plaintiffs to have their fingerprints taken on any day between September 22 and October 06, 2015. Plaintiffs attended their appointment, as noted by the red date stamps of "OCT 01, 2015". See collective Exhibit A.

15.   On or about March 09, 2022, Maria Christina Flores, Esq. was retained to further represent Plaintiffs before Defendant USCIS.

16.   On or about March 09, 2022, Attorney Flores submitted an email to Defendant USCIS Los Angeles Asylum Office stating that

she had been retained by Plaintiffs to take over representation on their case that had been pending since September 17, 2015. She also asked to update the plaintiffs' mailing address and further stated that she looked forward to receiving notification of their interview in the near future.

17.  On or about March 10, 2022, Plaintiffs' Attorney Ms. Flores received an email from Defendant USCIS' Los Angeles Asylum Office stating: "Per your request, we've added your representation to Zhelin Zhao's case in the asylum base and have added his mailing address as: 8651 AUTUMN PATH ST, CHINO CA 91708."

18.  On or about March 09, 2022, Defendant USCIS issued an automated email response which stated that a "Stand-By List" had been closed as of 02/16/2021. It also stated that the inquiry had been received and would be answered in 15 days. It went on to state "USCIS schedules asylum interviews in the following priority (as summarized):

*First priority: Applications that had already been scheduled, but that had to be rescheduled.

*Second priority: Applications that have been pending 21 days or less.

*Third priority: All other affirmative asylum applications will be scheduled for interviews **starting with newer filings and working backward to older filings.**" (Emphasis added).

A copy of the above-mentioned emails, paragraphs 16-18 is attached hereto as part of collective Exhibit B.

19.  On or about Aug. 8, 2022, an online case status inquiry through Defendant USCIS' website was done. The results stated:

"NEXT STEP IS AN INTERVIEW

1   The next step in your application is an in-person interview.
2   Once we have scheduled your interview, you will receive an
3   interview notice…" Case Status Online
4   A copy of this online case status inquiry is attached hereto
5   as part of collective Exhibit C.
6   20.   To date, Defendants have not issued an interview notice
7   on Plaintiffs' Form I-589 applications for Asylum. Nor do they
8   plan to, based on their unlawful and unauthorized policy change.

9   <u>ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED</u>

10   21.   Plaintiffs have complied with Defendants' requirements
11   regarding applications for asylum to the USCIS. 8 CFR §208.1, et
12   seq.

13   22.   Since Plaintiffs cannot appeal a decision that has not
14   been rendered and since federal law requires Plaintiffs to follow
15   the application process they are now following, Plaintiffs have no
16   adequate administrative or legal remedy available to them aside
17   from the application process which is the subject of this
18   complaint. Only relief in the nature of mandamus, declaratory and
19   injunctive relief will protect Plaintiffs from Defendants'
20   nonfeasance and misfeasance.

21   23.   Pursuant to the APA a Court may "compel agency
22   action…unreasonably delayed." 5 USC §706(1). The Court may only
23   compel the agency to make a discrete action that it is required to
24   take. <u>Norton v. S. Utah Wilderness All.,</u> 542 U.S.55, 64 (2004).

25   24.   Although the Attorney General has the discretion to
26   grant or deny applications, that does not give rise to the
27   authority to simply never adjudicate an application. <u>Nigmadzhanov</u>
28   <u>v. Mueller, 550 F.Supp.</u> 2d 540, 546 (S.D.N.Y. 2008). With respect

- 5 -

1  to APA claims USCIS' argument that it does not have to adjudicate
2  an adjustment application "not only pushes the bounds of common
3  sense but is also contradicted by a wealth of authority from this
4  and other districts" (citations omitted). <u>Soneji v. Dep't of</u>
5  <u>Homeland Sec., 525 F.Supp.</u> 2d 1151, 1155 (N.D. Cal. 2007).

6      25.   The Supreme Court has indicated that courts should
7  consider "agency regulations that have the force of law" in
8  determining whether agency action is required. <u>Norton v. Southern</u>
9  <u>Utah Wilderness Alliance,</u> 542 U.S. 55, 65 (2004). "Thus, when an
10 agency uses mandatory language like 'shall,' a court should find
11 that there is a legal duty to act." <u>Ren v. Mueller</u>, 2008 U.S.
12 Dist. LEXIS 4300, *22 (M.D. Fla. 2008)[6:07- cv-790-Orl-19DAB M.D.
13 Fla. 2008). The applicable regulation states: "The Service **shall**
14 adjudicate the claim of each asylum applicant whose application is
15 complete within the meaning of §208.3(c)(3) and is within the
16 jurisdiction of the Service." 8 C.F.R. §208.9(a)[Emphasis added].

17  <u>TRAC FACTORS (Telecommunications Research & Action Center v.</u>
18         <u>FCC, 750 F.2d 70, 79-80 (D.C. Cir. 1984):</u>
       26.   To evaluate whether an agency's delay is unreasonable
19 under the APA, the six factors announced in <u>Telecommunications</u>
20 <u>Research & Action Center v. FCC,</u> 750 F.2d 70, 79-80 ["TRAC"], are
21 reviewed:
22
23         (1) The time the agency takes to make a
           decision must be governed by a "rule of
24         reason."
25         (2) Where Congress has provided a timetable or
           other indication of the speed with which it
26         expects the agency to proceed in the enabling
           statute, that statutory scheme may supply
27         content for this rule of reason.
28

(3) Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake.

(4) The court should consider the effect of expediting delayed action on agency activities of a higher or competing priority.

(5) The court should also take into account the nature and extent of the interests prejudiced by the delay.

(6) The court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" TRAC, 750 F.2d at 80.

27. Factor (1) the agency's delay must be governed by a rule of reason. Plaintiff's I-589 application was filed with defendant USCIS on September 17, 2015. It is now August of 2022. Thus, the application has been pending for almost 7 years, or approximately 84 months. [Has] "the time for agency action been reasonable…[r]epeatedly, courts in this and other circuits have concluded that 'a reasonable time for agency action is typically counted in weeks or months, not years.'" Nat. Res. Def. Council, Inc. v. EPA, 956 F.3d 1134, 1139 (9th Cir. 2020). Just because a delay is "not unusual" does not make it reasonable. See Jefrey v. INS, 710 F.Supp. 486 (S.D.N.Y. 1989). This is considered the most important factor but is not in itself determinative. A Cmty. Voice v. EPA, 878 F.3d 779, 787 (9th Cir. 2017).

28. Factor (2) the timetable provided in the statute may supply content to the rule of reason. 8 USC §1158(d)(5)(A)(1)(ii) provides: "in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is

filed…" Thus, in this situation Congress has provided a timeline, specifically 45 days.

29.   The statute states that the interview shall commence not later than 45 days after the application is filed. "The word 'will,' like the word 'shall,' is a mandatory term unless something in the context in which the word is used indicates otherwise." Nat. Res. Def. Council, 956 F.3d at 1078. Thus, unless there are exceptional circumstances, Congress expects that the initial interview shall commence within 45 days of the application being filed.

30.   Plaintiffs recognize the COVID-19 pandemic as an exceptional circumstance allowing for commencement of their initial interview beyond the 45 days. However, the delay must still be "reasonable." Plaintiffs' applications have been pending for five and a half years or, in other words, approximately sixty-six months before the pandemic began and now has been pending for a total of seven and a half years, which cannot be considered reasonable.

31.   8 USC §1158(d)(7), notwithstanding. This subsection states: "Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."

32.   This limitation only applies to subsection (d) of section 208. However, the right to apply for asylum is not based in subsection (d), but subsection (a) and Plaintiffs have a claim to an adjudication of their application within a reasonable time

1   under the APA. <u>Alkassab v. Rodriguez,</u> 2017 U.S. Dist. LEXIS 50110

2   (D.S.C. 2017) [2:16-cv-1267-RMG Dist. of South Carolina].

3       33.   "[T]he Due Process Clause applies to all 'persons'

4   within the United States, including aliens, whether their presence

5   here is lawful, unlawful, temporary, or permanent." <u>Zadvydas v.</u>

6   <u>Davies et al.,</u> 533 U.S. 678, 693 (2001).

7       34.   Statutes must be interpreted so as to avoid serious

8   constitutional questions. <u>Zadvydas</u>, at 688-702 (2001); see also

9   <u>Clark v. Martinez,</u> 543 U.S. 371 (2005)[re: inadmissible persons].

10      35.   "'[I]t is a cardinal principle' of statutory

11  interpretation, however, that when an Act of Congress raises 'a

12  serious doubt' as to its constitutionality, 'this Court will first

13  ascertain whether a construction of the statute is fairly possible

14  by which the question may be avoided.' <u>Crowell v. Benson, 285 U.</u>

15  <u>S. 22, 62 (1932); see also United States v. X-Citement Video,</u>

16  <u>Inc., 513 U. S. 64, 78 (1994); United States v. Jin Fuey Moy, 241</u>

17  <u>U. S. 394, 401 (1916); cf. Almendarez-Torres v. United States, 523</u>

18  <u>U. S. 224, 238 (1998)</u> (construction of statute that avoids

19  invalidation best reflects congressional will). We have read

20  significant limitations into other immigration statutes in order

21  to avoid their constitutional invalidation. See <u>United States v.</u>

22  <u>Witkovich, 353 U. S. 194, 195, 202 (1957)</u>…"

23      36.   In December of 2014, Defendant USCIS implemented First-

24  in, First-out ("FIFO") processing, meaning that asylum applicants

25  would be scheduled for interviews in the order that the

26  applications were filed. On January 28, 2018, Defendant USCIS

27  implemented Last-in, First-out ("LIFO") processing, meaning that

28  the most recent applications would be scheduled for interviews

1  before earlier filed applications. Thus, meaning that the earlier

2  filed applications would stagnate and continue to languish.

3      37.   Plaintiffs filed their I-589 asylum application on

4  September 17, 2015, after December 2014, but before January 28,

5  2018, and Defendants did not inform them of this change in policy

6  nor that it would apply to their application.

7      38.   Defendants have the authority to change implementing

8  regulations to the statute via the APA. However, Defendants did

9  not properly exercise this authority by publishing proposed

10 changes in the Federal Register and allowing for public comment as

11 required by the APA.

12     39.   Defendants, thus, did not properly exercise their

13 authority under the APA, violating their duty under that statute.

14 In addition, Defendants did not inform Plaintiffs that although

15 they filed their application as a time when FIFO (First-in, First-

16 out) processing was in effect, the new LIFO (Last-in, First-out)

17 would be applied to them, in effect, stopping their forward

18 progress through the line dead in its tracks, thereby violating

19 Plaintiffs' due process rights under the 5th amendment to the U.S.

20 Constitution.

21     40.   Factor (3) delays are less tolerable when human health

22 and welfare are at stake. As a result of Defendants' inaction

23 Plaintiffs have been unlawfully deprived of a timely determination

24 of their I-589 application for asylum. Due to Defendants' failure

25 to timely make a decision on Plaintiffs' application, Plaintiff

26 has been unlawfully deprived of the opportunity to timely obtain

27 the substantial and unique benefits of asylum status.

28

41.   Plaintiffs has suffered and will suffer irreparable harm because of Defendants' nonfeasance and misfeasance. Such harm includes, but is not limited to, deprivation of the substantial and unique benefits, including protection of asylum status including protection under the laws of the United States; the right to enter and remain in the United States; freedom of movement and travel; the right to obtain and retain employment in the United States without having to continually renew employment authorization; and the right to eventually apply for lawful permanent residence. Plaintiffs has also been subject to fear, despair, preoccupation and uncertainty engendered by her inability to obtain lawful asylum status, the inability to travel and carry out necessary activities, because of the long- delayed decision on her application.

42.   Factor (4) the Court should consider the effect of expediting delayed action on the agency's activities of a higher or competing priority.

43.   Although Defendants may argue that this policy was necessary at a resource-allocation issue their own words defy this notion: "This priority approach…seeks to deter those who might try to use the existing backlog as a means to obtain employment authorization. Returning to a 'last in, first out' interview schedule will allow USCIS to identify frivolous, fraudulent or otherwise non-meritorious asylum claims earlier and place those individuals into removal proceedings." A copy of the archived notice: USCIS to Take Action to Address Asylum Backlog last updated 02/02/2018 attached hereto as Exhibit C.

1      44.   Factor (5) the Court should take into account the nature
2  and extent of the interests prejudiced by the delay. The nature
3  and extent of the prejudice suffered by Plaintiffs is laid out in
4  paragraphs 38-41 inclusive.

5      45.   Factor (6) the Court need not find any impropriety
6  behind the agency's delay in order to hold that action has been
7  delayed unreasonably.

8      46.   An order in Mandamus requiring Defendants to give
9  Plaintiffs an asylum interview will not put them at the head of
10  the queue and simply push all others back one space; their
11  unlawful policy change of LIFO (last-in, first-out) practically
12  guarantees that they would never get a space in the queue and
13  never move anywhere. Cf. In re Barr Lab'ys, Inc., 930 F.2d 72,
14  1975-76 (D.C. Cir. 1991).

15
16              …the fact that the relevant agencies lack
                sufficient   resources   to   timely   process
17              all…applications is ultimately a problem for
                the political branches…It is not the aggrieved
18              applicants who have created this problem, and
                it would not be appropriate for the courts to
19              shift the burdens of this…onto the shoulders
                of individual immigrants. Zhou v. FBI Director,
20              2008 U.S. Dist. LEXIS 46186 *22)[07-cv-238-PB
                D.N.H. 2008, Op.No. 2008 DNH 115].

21  See Tang v. Chertoff, 493 F.Supp. 2d 148, 158 (D.Mass. 2007)[The
22  lack of agency resources is a "policy crisis" but "it is not
23  plaintiffs who ask the Court to take on the burden of remedying
24  this crisis. Rather, it is defendants who ask the Court to relieve
25  the pressure by excusing them from their statutory duty and
26  letting the cost fall on immigrant plaintiffs." See also, Galvez v.
27
28

1 Howerton, 503 F.Supp. 35, 39 (C.D.Cal. 1980); Jianhua Dong v.

2 Chertoff, 513 F.Supp. 2d 1158, 1171-72 (N.D.Cal. 2007).

3                              FIRST CLAIM FOR RELIEF

4      47.  Plaintiffs incorporate by this reference and re-alleges

5 as though fully set forth herein the allegations of paragraphs

6 through 46 inclusive.

7      48.  Defendants' knowing, reckless and negligent engagement

8 in a pattern and practice of unjustified delays in handling the

9 administrative matters before them violates Defendants'

10 nondiscretionary duty under the INA, and the APA, owed to

11 Plaintiff and other similarly situated persons, to conclude

12 matters presented to them within the timeframe prescribed by law

13 or at a minimum a reasonable time and with due regard for the

14 convenience and necessity of the parties.

15      49.  Defendants' unauthorized and unlawful creation and use

16 of the procedure of LIFO (last-in, first-out), meaning that other

17 asylum (I-589) application filed after Plaintiffs' will be

18 processed and adjudicated while Plaintiffs' application will

19 remain pending and stagnant. Defendants created this procedure

20 without lawful authority and in violation of the rule making

21 process under the APA; not allowing for notice and comment to the

22 public. Moreover, Plaintiffs were not notified that this procedure

23 would be applied to their applications after filing their

24 application(s) with Defendant USCIS on September 17, 2015. The

25 LIFO procedure was implemented on 01/28/2018, after Plaintiffs had

26 filed their application. This action by Defendants is a violation

27 of Plaintiffs' rights to due process of law under the 5th Amendment

28 to the U.S. Constitution.

1              SECOND CLAIM FOR RELIEF

2      50.   Plaintiffs incorporates by this reference and re-allege

3   as though fully set forth herein the allegations of paragraphs

4   through 49 inclusive.

5      51.   Defendants' knowing, reckless and negligent engagement

6   in a pattern and practice of unjustified delays in handling the

7   matters before it violates Plaintiffs' right, and the right of

8   similarly situated persons, to due process of law, as guaranteed

9   by the 5th amendment to the U.S. Constitution.

10      WHEREFORE, in light of the foregoing, Plaintiffs respectfully

11   requests that the Defendants be cited to appear herein, and that

12   this Court enter orders, as to each of them, as follows:

13          1.   Declaratory judgment, pursuant to 28 USC §§2201-

14               2202, declaring the rights and duties of Plaintiffs

15               and Defendants;

16          2.   require Defendants to adjudicate Plaintiffs'

17               application for asylum;

18          3.   award Plaintiffs reasonable attorney's fees,

19               related to expenses and costs; and

20          4.   grant such further relief at law and in equity as

21               justice may require or such other relief as the

22               Court may deem just and proper.

23

24   DATED: August 8, 2022              Respectfully submitted,

25

26

27                                     /s/Hanzhang Xu
                                       Hanzhang Xu,
28                                     Counsel for Plaintiffs

                          - 14 -